IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. CIV-14-415-RAW |
|  | ) |  |
| JOHN DEFELICE, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## ORDER

Before the court are the cross-motions of the parties for summary judgment. Plaintiff brings three claims against defendant: (1) violation of the False Claims Act ("FCA"); (2) unjust enrichment; and (3) payment under mistake of fact. Plaintiff contends that between June 2007 and April 2012, defendant was paid $119,218.00 in Social Security Administration retirement benefits which were in the name of his mother, Janet DeFelice. The payments were made into a bank account jointly owned by Janet DeFelice and defendant.[1] Plaintiff contends that Janet DeFelice went missing on June 1, 2007 and defendant did not notify plaintiff. On June 1, 2012, the State of California issued a death certificate for Janet DeFelice. Plaintiff seeks recovery of some or all of these funds.

Summary judgment is appropriate only if there is no genuine dispute of material fact

---

[1]Defendant was never made the "representative payee" of Janet DeFelice pursuant to 42 U.S.C. §405(j).

and the movant is entitled to judgment as a matter of law. Rule 56(a) F.R.Cv.P. The court views all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *Wahlcometroflex, Inc. v. Westar Energy, Inc.,* 773 F.3d 223, 226 (10th Cir.2014). Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another. *Ultra Clean Holdings, Inc. v. TFG-California, L.P.,* 534 Fed.Appx. 776, 780 (10th Cir.2013). When the parties file cross-motions for summary judgment, the court is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts. *Id.*

Generally, the FCA "covers all fraudulent attempts to cause the government to pay out sums of money." *United States ex rel. Conner v. Salina Reg'l Health Cir., Inc.,* 543 F.3d 1211, 1217 (10th Cir.2008). When plaintiff proceeds under 31 U.S.C. §3729(a)(1)(A), liability arises "when a government payee submits either a legally or factually false request for payment." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.,* 614 F.3d 1163, 1168 (10th Cir.2010). Here, defendant cites *Lemmon* and notes that he did not present or cause to be presented any claim for payment and therefore cannot be liable under that provision. Defendant seeks summary judgment on that basis.

In response, plaintiff correctly contends defendant's argument in this regard does not address plaintiff's claim. Plaintiff argues that it does not proceed under §3729(a)(1)(A), but

rather under the provision governing what have been called "reverse false claims."[2]  As pertinent here, a reverse false claim occurs when a person "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, <u>or</u> knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. §3729(a)(1)(G) (emphasis added).  Plaintiff relies on the portion after the emphasis.

"Obligation" is defined to mean "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from *the retention of any overpayment*."  31 U.S.C. §3729(b)(3) (emphasis added).[3]  There must be a "clear" obligation or liability to the Government.  *United States ex rel. Petratos v. Genentech, Inc.,* 2015 WL 6561240, *9 (D.N.J.2015).

---

[2]The prohibited conduct is known as a reverse false claim because "the action of the defendant results not in improper payment to the defendant from the Government, but rather no payment to the Government when payment is otherwise obligated." *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.,* 668 F.Supp.2d 780, 811-12 (E.D.La.2009).  Prior to recent amendments (to be discussed) the Tenth Circuit stated "[a] reverse false claim is documentation resulting in an underpayment to the Government, as opposed to a false claim, generally referring to an inflated or false bill for payment from the Government." *United States ex rel. Grynberg v. Praxair, Inc.,* 389 F.3d 1038, 1040 n.2 (10th Cir.2004).

[3]This definition of "obligation" was added by the Fraud Enforcement and Recovery Act ("FERA") in 2009.  "Prior to the 2009 amendments, the reverse claims provision left a 'loophole' that excused from liability the concealment, avoidance, or decreasing of an obligation to return to the Government 'money or property that is knowingly retained by a person even though they have no right to it.'" *Kane ex rel. United States v. Healthfirst, Inc.,* 2015 WL 4619686, *5 (S.D.N.Y.2015).  Plaintiffs' argument in *United States ex rel. Scharber v. Golden Gate Nat. Senior Care,* 2015 WL 5718600, *16 (D.Minn.2015) was that "all that is required is the knowing retention of an overpayment of government funds."  This is basically the government's argument in the case at bar.

3

The question, therefore, is whether defendant was under an "obligation" (as defined) to return the funds. The Social Security Act provides that a properly qualified individual "shall be entitled to an old-age insurance benefit for each month, beginning with . . . the first month in which such individual meets the criteria specified . . . and ending with the month preceding the month in which [she] dies." 42 U.S.C. §402(a). In other words, the cut-off for receiving benefits is <u>death</u>. There does not appear to be a provision for the situation here, in which the lawfully-entitled recipient "went missing" and was only declared dead years later.

The parties' briefing does not, in the court's view, engage with the determinative issue. "The scienter element is 'critical' to establishing liability under the False Claims Act." *United States ex rel. Ruhe v. Masimo Corp.,* 977 F.Supp.2d 981, 991 (C.D.Cal.2013)(citing *United States ex rel. Hochman v. Nackman,* 145 F.3d 1069, 1073 (9th Cir.1998)). The pertinent portion of 31 U.S.C. §3729(a)(1)(G) indicates that the scienter required for liability under this portion of the FCA is concealment or improper avoidance of an obligation to pay the government that is done <u>knowingly</u>. Pursuant to 31 U.S.C. §3729(b)(1)(A), this means that a person, with respect to information, (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information.[4]

Plaintiff's factual basis for defendant acting "knowingly" appears to be contained in the affidavit of Matthew Pannell of the Social Security Administration, Office of Inspector

---

[4]Pursuant to §3729(b)(1)(B), the term "knowingly" requires no proof of specific intent to defraud.

General. In the affidavit (#36-1) Mr. Pannell states that "[h]ad the Social Security Administration been made aware that Janet DeFelice had gone missing her benefits would have suspended in June of 2007, due to its 'whereabouts unknown policy.'" (¶2). He then proceeds to describe how such a situation is handled by the SSA. The flaw here, in the court's view, is that the "whereabouts unknown policy" is just that – an internal policy. Nothing in the record indicates that a statute, rule or regulation (i.e., a directive in the public record) puts someone in defendant's position on notice that he is to advise the SSA that a recipient has gone missing. Without such a notice available to the public, the court on the present record cannot infer that defendant had the requisite scienter in failing to pay this money back to the government.[5] Accordingly, the court declines to grant plaintiff's motion for summary judgment as to plaintiff's FCA claim.

On the other hand, the court will likewise deny defendant's motion for summary judgment regarding the merits of the FCA claim. First, defendant did not seek judgment on the basis of lack of scienter – the court has raised the issue. Second, the presence or absence

---

[5]Plaintiff cites the statement in *Dockstader v. Miller,* 719 F.2d 327 (10th Cir.1983) that the defendant "received benefits to which she had no claim of entitlement." *Id.* at 331. In that case, however, the defendant's spouse had died. Death is clearly set forth statutorily as a cut-off for benefits. The recipient "going missing" appears to be a lacuna in the regulatory scheme.
  "Under Tenth Circuit authority, simple negligence does not violate the False Claims Act." *United States ex rel. Boggs v. Bright Smile Family Dentistry, P.L.C.,* 2013 WL 1688898 at *3 (citing *United States ex rel. Burlbaw v. Orenduff,* 548 F.3d 931, 949 (10th Cir.2008)). *See also United States ex rel. Hamilton v. Yavapai Cmty. Coll. Dist.,* 2015 WL 1522174 at *3 (D.Ariz.2015)(while innocent mistakes, mere negligent representations and differences in interpretation are not false certifications under the FCA, the "knowing" scienter needed for a violation of the FCA may be established not only through a showing of actual knowledge of the falsity of a claim, but also through a showing of deliberate indifference or reckless disregard of whether the claim is false.)

of scienter is a question of fact.[6] It is true that the parties have waived jury trial in this matter (*see* #19). There is a split of authority, however, regarding a district court making factual findings (and credibility determinations) at the summary judgment stage, even before a bench trial. It appears the Tenth Circuit disfavors such an approach. *See Citizen Awareness Project, Inc. v. Internal Revenue Service,* 2015 WL 2155723 n.1 (D.Colo.2015)(*citing Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 949 (10th Cir.2002)).

Defendant also moves for summary judgment on the FCA claim on statute of limitation grounds. Pursuant to 31 U.S.C. §3731(b), an action pursuant to the FCA must be brought: (1) six years from the date that a violation occurs, or (2) three years from the date that the facts material to the fraud are known or should have been known by the official of the United States charged with responsibility to act in the circumstances, whichever occurs last. *United States v. R.J. Zavoral & Sons, Inc.,* 2014 WL 5361991 at *8 (D.Minn.2014). The limitations period under §3731(b)(2) begins to run when an official who has authority to initiate litigation under the FCA obtains knowledge of the fraud – not just any government official. *Id.*

The first payment to defendant which was (in plaintiff's theory of the case) legally actionable took place in May, 2009 (*see* footnote 8 of this order). The original complaint in this case was filed on September 23, 2014.[7] This is within the six-year period of 31 U.S.C.

---

[6]*See United States ex rel. Lockyer v. Hawaii Pacific Health Group Plan,* 343 Fed.Appx.279, 281 (9th Cir.2009).

[7]The SSA was first notified on February 8, 2012 (by telephone) and February 10, 2012 (by email) that Janet DeFelice went missing on June 1, 2007 (Pannell Affidavit, #36-1)(¶¶15-16). The SSA suspended

§3731(b)(1). Assuming for the sake of argument that the tolling provision of §3731(b)(2) must be invoked, defendant argues that the U.S. Department of Justice knew or should have known Janet DeFelice was a missing person when her information was entered into the National Missing Persons Data System, on December 12, 2008. (#34 at page 11 of 17 in the CM/ECF pagination). The court disagrees, at least for summary judgment purposes. This seems too attenuated to satisfy a "should have been known" standard. Defendant's motion for summary judgment is also denied as to the FCA statute of limitation. Defendant's argument may be reurged at trial, as may of course any of the parties' arguments.[8]

As previously stated, plaintiff also brings common law claims. This is permissible, inasmuch as "the United States has a longstanding power, independent of any statute, to recover monies its agents have wrongfully, erroneously, or illegally paid out pursuant to the federal common law doctrines of unjust enrichment and/or payment by mistake." *United States v. BNP Paribas SA,* 884 F.Supp.2d 589, 616 (S.D.Tex.2012)(citing *United States v. Wurts,* 303 U.S. 414 (1938)). *See also United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660, 667-68 (4th Cir.1996)(government may seek relief under common law actions as a supplement to statutory remedies, so long as the statutes do not expressly abrogate common

---

payment of benefits to Janet DeFelice on April 13, 2012. (*Id.* at ¶11).

[8]There is a "limitation" on the plaintiff's FCA claim which the plaintiff implicitly acknowledges. The revisions under FERA to 31 U.S.C. §3729(a)(1)(G) were not made retroactive by Congress and do not apply to conduct that occurred before May 20, 2009. *See United States ex rel. Bahrani v. ConAgra,* 624 F.3d 1275, 1303 (10th Cir.2010); *United States ex rel. Dennis v. Health Mgmt. Assoc., Inc.,* 2013 WL 146048 at *8 (M.D.Tenn.2013). Therefore, it appears plaintiff is only seeking recovery under the FCA for the monthly payments made between May 20, 2009 and April 2012. Plaintiff indicates the amount of such payments is $72,578.00. (#35 at 6).

law remedies). The FCA does not so abrogate, but of course the court will not permit double recovery. *See United States v. Rachel,* 289 F.Supp.2d 688, 697 (D.Md.2003).

The elements of a federal common law claim of unjust enrichment are: (1) the Government had a reasonable expectation of payment; (2) the defendant should reasonably have expected to pay; (3) society's reasonable expectations of person and property would be defeated by nonpayment. *United States v. Rogan,* 459 F.Supp.2d 692, 728 (N.D.Ill.2006), *aff'd*, 517 f.3d 449 (7th Cir.2008). "This paradigm can be inverted when there is a reasonable expectation of <u>repayment</u>." *United States v. Technologies Corp.,* 2012 WL 2263280, *4 (S.D.Ohio 2012)(emphasis added).

"Under the common-law theory of payment by mistake, the government may 'recover money it mistakenly, erroneously, or illegally paid from a party that received the funds without right.'" *United States v. Medica Rents Co. Ltd.,* 2008 WL 3876307 at *3 (5th Cir.2008)(citation omitted).

Defendant seeks summary judgment on the common law claims on statute of limitation grounds. Defendant cites the Oklahoma statute of limitation for unjust enrichment, but the court agrees with plaintiff that the applicable provision is contained in federal law, specifically 28 U.S.C. §2415. Subsection (a) of that statute provides that a claim by the United States based on contract must be brought within six years after the right of action accrues. The court is not persuaded at this time that the plaintiff's common law claims sound in contract.

Subsection (b) of §2415 provides that a claim of the United States founded upon a tort shall be filed within three years after the right of action accrues. Moreover, 28 U.S.C. §2416(c) provides the limitation periods are tolled when "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances." This is similar to the tolling provision regarding the FCA claim and the court makes the same ruling for summary judgment purposes. Defendant's motion will not be granted regarding statute of limitation on the common law claims.[9]

Both parties also seek summary judgment on the merits of the common law claims. As to both, defendant contends he had a legally justifiable entitlement to Janet DeFelice's SSA benefits, and the plaintiff argues to the contrary. As the court described in discussing the FCA claim, this appears to be an issue of first impression and a gray area. The common law claims sound in equity, and the court is not persuaded the matter is clear enough for summary judgment for either side. Accordingly, both motions are denied in all respects.

---

[9]The Tenth Circuit states that a "fact material to the right of action" should be interpreted to "necessarily includ[e] the fact that gave rise to the cause of action." *Phillips Petroleum v. Lujan,* 4 F.3d 858, 862 (10th Cir.1993). Under this reading, it appears plaintiff's claim for damages on the common law claims would be limited to conduct after May 20, 2009, just as the court has tentatively ruled it is so limited under the FCA claim (*see* footnote 8 of this order). The FCA claim, of course, carries the potential for civil penalties and treble damages, pursuant to 31 U.S.C. §3729.

It is the order of the court that the motion of the plaintiff for summary judgment (#35) is hereby denied. The motion of the defendant for summary judgment (#34) is also hereby denied.

**ORDERED THIS 10th DAY OF NOVEMBER, 2015.**

_Ronald A. White_
Ronald A. White
United States District Judge
Eastern District of Oklahoma