IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-14-415-RAW |
| JOHN DEFELICE, | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came on for non-jury trial on January 6, 2016. Having considered the record as a whole, the court hereby enters its findings of fact and conclusions of law pursuant to Rule 52(a)(1) F.R.Cv.P. To the extent a finding of fact constitutes a conclusion of law, the court adopts it as such. To the extent a conclusion of law constitutes a finding of fact, the court adopts it as such.

Findings of Fact

1. Plaintiff is the United States of America, which brings claims against defendant John DeFelice ("defendant").

2. Defendant is the son of Janet DeFelice ("Janet").

3. In May, 2007, defendant and Janet resided in California. On May 31, 2007, a joint decision was made that Janet would move to defendant's ranch in Templeton, California. She had been living in Costa Mesa, California.

4. Defendant envisioned the move as a temporary arrangement. (TR.8.19-22;26.17-27.4).

5. The next morning after the move, Janet could not be found. (TR.12.4-5).

6. At the time she went missing, Janet was a recipient of Social Security benefits. (TR.16.18-20).

7. Despite concerted efforts by defendant's family and the authorities, Janet has never been found.

8. The Social Security benefits were deposited by the plaintiff into a checking account, held jointly by Janet and defendant. Defendant helped Janet with her finances. (TR.22.16-24). He also made investments on her behalf. (TR.27.12-13). Some investments were made even after Janet went missing. (TR.30.3-6).

9. The Social Security funds continued to be deposited into the account until June of 2012. From time to time, defendant transferred money from the joint account into investment accounts he shared with his mother and into a bank account he shared with his wife. (TR.32.25 – 33.17).

10. The State of California issued a certificate of death for Janet DeFelice on June 1, 2012. (Plaintiff's Exh. 6).

11. In 1999, Janet had prepared a promissory note to defendant for mortgage payments which defendant had made on her behalf. (TR.29.2-7;44.19-23)(Defendant's Exh. 3).[1]

---

[1] The court provisionally admitted this Exhibit over plaintiff's objection. Defendant cited Rule 803(3) F.R.Evid. and argued that "[t]his document shows intent or plan to reimburse her son for monies that he spent on her behalf." (TR.48.25–49.1-2). The court now admits the document but on a different basis. The court considers the document not for its truth, but for defendant's reliance on the document in dealing

12. Defendant and his family moved from California to Oklahoma after Janet went missing. (TR.31.15-17).

13. In 2003, Janet had executed a Power of Attorney naming defendant as Attorney in Fact. (TR.34.8-12)(Plaintiff's Exh.7).

14. Defendant had reported his mother missing to the San Luis Obispo Sheriff's office, but not to the Social Security Administration. (TR.35.2-7).

15. Defendant continued to draw on Social Security funds deposited after his mother went missing and used them for investment purposes. (TR.35.12-19). He felt justified in so doing because of the promissory note executed by his mother. (TR.35.20-24). Defendant no longer has the funds. (TR.36.6-7).

16. A report of Janet's missing status was made to the Social Security Administration and her benefits were suspended effective April 2012. The records do not reflect who made the report. (TR.67.9-16).

17. The total amount paid by the SSA to Janet DeFelice between June, 2007 and April, 2012 is $119,218.00. (TR.62.22-25 – 63.1-11).

Conclusions of Law

1. This court has jurisdiction over this action and venue is appropriate in the United States District Court for the Eastern District of Oklahoma.

---

with the funds in question. Defendant's belief that his mother wished to repay her debt to him countervails against a finding that he "knowingly" (as defined by the FCA) avoided an obligation to repay the government.

3

2. Plaintiff brings three claims against defendant: (1) violation of the False Claims Act ("FCA"); (2) unjust enrichment; and (3) payment under mistake of fact.

3. As pertinent here, plaintiff's FCA claim centers on the statutory imposition of liability against any person who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. §3729(a)(1)(G). "Knowingly" means that a person, with respect to information, (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. §3729(b)(1)(A).

4. As pertinent here, "obligation" means "an established duty, whether or not fixed, arising from . . . the retention of any overpayment." 31 U.S.C. §3729(b)(3).

5. The Social Security Administration has a Program Operations Manual System ("POMS"). Section GN 02602.320 of that Manual is titled "Whereabouts Unknown." In pertinent part, the Section states that benefits are to be suspended when the recipient's whereabouts are unknown. *See also* TR.66.14-17.

6. Plaintiff argues that consideration of defendant's education and experience in business lead to an inference that he acted in deliberate ignorance or reckless disregard as to an obligation to return his mother's Social Security benefits to the government. As part of this argument, plaintiff notes that the POMS is available to the general public online. (TR.68.15-18).

4

7.  The issue is close, but the court ultimately does not adopt plaintiff's argument and instead finds plaintiff has failed in its burden of proof as to the FCA claim. *See* 31 U.S.C. §3731(c). The preamble to the POMS states: "Please note that this document is intended for SSA employees." The section dealing with "Whereabouts Unknown" instructs employees how to proceed in such a situation. The court finds it places no legal burden on someone such as defendant to alert the SSA that such a situation exists. Moreover, an agency cannot rely upon a general statement of policy as law because a general statement of policy only announces what the agency seeks to establish as policy. *See American Min. Congress v. Marshall,* 671 F.2d 1251, 1263 (10th Cir.1982).

8.  At the most, failing to search out the SSA website and locate its "Whereabouts Unknown" policy might be characterized as negligence on defendant's part. "Under Tenth Circuit authority, simple negligence does not violate the False Claims Act." *United States ex rel. Boggs v. Bright Smile Family Dentistry, P.L.C.,* 2013 WL 1688898 at *3 (W.D.Okla.2013)(citing *United States ex rel. Burlbaw v. Orenduff,* 548 F.3d 931, 949 (10th Cir.2008)). Rather, an aggravated form of gross negligence is required. *See Orenduff,* 548 F.3d at 945 n.12. The requisite scienter has not been proven, and the court rules for defendant as to the plaintiff's claim under the FCA.[2]

---

[2] The court previously made an oral finding during this litigation that the position of the United States was "substantially justified" under 28 U.S.C. §2412(d)(1)(A). The court finds that the government's litigating position as to the FCA claim, although wrong, was reasonable. *See Madron v. Astrue,* 646 F.3d 1255, 1257 (10th Cir.2011).

5

9. The analysis changes, however, as to plaintiff's common law claims. This is so because unjust enrichment, for example, is an equitable doctrine and "[a] plaintiff can prevail on an unjust enrichment claim even when a defendant is not a wrongdoer." *Qwest Communications Corp. v. Free Conferencing Corp.,* 2014 WL 5782543, *16 (D.S.D.2014). That is to say, for the common law claims there is no heightened scienter requirement as under the FCA.[3]

10. The elements of a federal common law claim of unjust enrichment are: (1) the Government had a reasonable expectation of payment; (2) the defendant should reasonably have expected to pay; (3) society's reasonable expectations of person and property would be defeated by nonpayment. *United States v. Rogan,* 459 F.Supp.2d 692, 728 (N.D.Ill.2006), *aff'd*, 517 F.3d 449 (7th Cir.2008). "This paradigm can be inverted when there is a reasonable expectation of <u>repayment</u>." *United States v. Technologies Corp.,* 2012 WL 2263280, *4 (S.D.Ohio 2012)(emphasis added). The court finds these elements have been satisfied and plaintiff should prevail on its unjust enrichment claim. Without the necessity of considering the justification in defendant's own mind, the court holds as a matter of equity that even without defendant examining the Social Security "Whereabouts Unknown" policy statement, defendant should reasonably have expected to repay, rather than keep (and disperse) Social Security benefits directly paid to his missing mother.

---

[3]The distinction is not trivial, as there is a large disparity in damage calculations. Under the FCA, each false claim requires the imposition of a civil penalty of not less than $5,500 and not less than $11,000. *See* 31 U.S.C. §3729(a)(1); 28 C.F.R. §85.3(a)(9). Moreover, the imposition of treble damages on the amount of actual damages is mandatory under §3729(a)(1).

11. "Under the common-law theory of payment by mistake, the government may 'recover money it mistakenly, erroneously, or illegally paid from a party that received the funds without right.'" *United States v. Medica Rents Co. Ltd.,* 2008 WL 3876307, *3 (5th Cir.2008)(citation omitted). The court finds plaintiff should prevail as to this claim as well. If anything, plaintiff's claim under this theory is stronger than its unjust enrichment claim. Like the FCA claim, an unjust enrichment claim has some focus on the defendant who received the funds and the reasonableness of his actions. The claim of payment by mistake, by contrast, has its focus on the payor of the funds.[4] Here, the Social Security "Whereabouts Unknown" policy is relevant, and demonstrates that the funds would not have been paid if the SSA had known Janet was missing.

12. Defendant's argument against the common law claims is that, pursuant to 42 U.S.C. §402(a), the recipient is entitled to Social Security benefits until death, and that Janet's "death" did not occur until the State of California declared her dead on June 1, 2012. Thus, defendant was not "unjustly" enriched and the funds were not paid by mistake to a person "without right" to them because the money belonged to Janet. (TR.79.8-14). The logical conclusion of this argument is that the SSA's "Whereabouts Unknown" policy is actually void, because it is contrary to 42 U.S.C. §402(a). The court disagrees. As authority for the "Whereabouts Unknown" policy, the POMS cites Section 1631(e)(1) of the Social

---

[4]Defense counsel raised the argument that the mistake must have been caused or created by the defendant for the doctrine to be applicable. (TR.78.3-13). The court has found no authority for this proposition in the present context.

7

Security Act, which is codified at 42 U.S.C. §1383(e)(1). That provision in pertinent part gives the Commissioner of Social Security authority to "prescribe such requirements with respect to . . the suspension or termination of assistance. . . " The "Whereabouts Unknown" policy, prescribing the circumstances of suspension and ultimate termination, appears to fit within that statutory authority.

13. In his motion for summary judgment (#34), defendant raised a statute of limitation defense as to the government's claims. The court's order (#49) declined to grant summary judgment, but said the defense could be reurged at trial. It was not.

14. Having found for defendant as to the FCA claim, the statute of limitation defense will not be addressed.

15. As to the common law claims, the court now addresses an issue left open by its previous order. The court finds that a federal claim for unjust enrichment is subject to the six-year limitations period for contract actions established in 28 U.S.C. §2415(a). *See United States v. Intrados/Int'l Mgmt. Group,* 265 F.Supp.2d 1, 13-14 (D.D.C.2002). A similar finding is made as to the claim for payment by mistake. *See United States v. Reunion Mortgage, Inc.,* 2013 WL 5944252 n.3 (N.D.Calif.2013).

16. The complaint in the case at bar was filed on September 23, 2014. The cause of actions did not accrue until plaintiff became aware that Janet was missing. *See* 28 U.S.C. §2416(c). Under the court's findings, this was early in 2012. Therefore, the common law claims were timely filed.

17. The amount of damages likewise will not be addressed as to the FCA claim. While the court finds for plaintiff as to both common law claims, double recovery is of course not permissible. Accordingly, the evidence establishes that plaintiff is entitled to recover the sum of $119,218.00.

18. In its order (#49) denying the parties' cross-motions for summary judgment, the court suggested plaintiff might only be entitled to seek recovery under the FCA for conduct that occurred on or after May 20, 2009. (*Id.* at 7 n.8). The court tentatively suggested a similar limitation as to the damages recoverable under the common law claims. (*Id.* at 9 n.9). The court has now reconsidered this position and concludes the government is entitled to seek the full amount under the common law claims, which has been awarded. Again, the logic is even stronger as to the claim for payment by mistake. The "mistake" was payment contrary to the "Whereabouts Unknown" policy, and this conclusion is not affected by the amendments to the FCA discussed in footnote 8 of the previous order.

It is the order of the court that judgment shall be entered in favor of plaintiff as to the claim for unjust enrichment and payment by mistake, and that judgment shall be entered in favor of defendant as to the False Claims Act cause of action.

**ORDERED THIS 9th DAY OF FEBRUARY, 2016.**

**Dated this 9th day of February, 2016.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma